Filed 5/3/22  P. v. Garcia CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B315178 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA008252) |
| v. | |
| SERGIO GARCIA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Andrew C. Kim, Judge.  Affirmed.

Sergio Garcia, in pro. per.; Lori Nakaoka, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

A jury convicted Sergio Garcia of first degree murder and found true the allegation that he had personally used "deadly and dangerous weapon(s), to wit, a knife and a large rock" when he and a codefendant killed Robert Velasquez on the night of July 29, 1990.  In July 2021, Garcia filed a petition for resentencing under Penal Code section 1170.95, alleging that he could not now be convicted of first or second degree murder for Velasquez's death and requesting appointed counsel.[1]

As the trial court explained, the record of conviction establishes that Garcia was tried not as an accomplice, but as Velasquez's actual killer.  Although the trial court erred by not appointing counsel upon Garcia's filing of a facially sufficient section 1170.95 petition, the record of conviction establishes that Garcia is ineligible for relief under section 1170.95 as a matter of law.  The trial court's error was harmless, and we will affirm.

## BACKGROUND

Our opinion in Garcia's direct appeal details that after a short interaction with Velasquez, Garcia and his codefendant formulated a plan to kill Velasquez and then carried it out.

"The two planned that [Garcia's codefendant, Jimmy] Perez[,] would tell Velasquez that they would share some heroin with him if he could supply a syringe.  They would then stop at Perez's [house] to get a knife under the guise of obtaining a spoon.  [Garcia] already had a knife.

"They found Velasquez at a bar and proceeded with their plan.  Velasquez obtained a syringe and, after stopping off at Perez's house for the knife and spoon, the three drove to the Pico Rivera Golf Course in [Garcia's car] and walked to a river bed

---

[1] Further statutory references are to the Penal Code.

near the golf course.  Perez had hidden a cup of water at the end of a dirt path and he turned his back and pulled out his knife as he drew some of the water into the syringe.  When Perez turned around, [Garcia] had already started to stab Velasquez.  Velasquez grabbed onto Perez and the two fell off the embankment.  As Velasquez stood up, [Garcia] grabbed him from behind and told Perez to stab Velasquez or else share the same fate.  In the process of stabbing Velasquez, Perez accidentally stabbed [Garcia's] hand.  Perez then dropped his knife and walked away, followed by [Garcia].  As Perez looked back, he saw that Velasquez was still moving and told [Garcia] that [Velasquez] was still alive.  [Garcia] went over to Velasquez, picked up a rock and hit him on the head at least once.  On the way to the car, [Garcia] asked for Perez's sweatshirt and wrapped it around his bleeding hand.  Perez drove them to his house where they tried unsuccessfully to treat [Garcia's] hands.  [Garcia] gave Perez his blood soaked shoes and socks and left.  Perez threw these items and the sweatshirt, along with his own pants, into the backyard pool.  The next day the items were retrieved and washed.

"On August 8, 1990, Perez took Sheriff's detectives to the river bed where Velasquez had been stabbed.  They found the knife Perez had used and Perez later gave them the shoes that [Garcia] wore at the time.  A medical examination of Velasquez's body concluded that the cause of death was multiple stab wounds and that a contributing factor was blunt force trauma to the top of his head.

"Los Angeles Sheriff's Department Criminalist Richard Catalani conducted blood tests on a large heavy rock found two feet from Velasquez.  These tests indicated that the source of

3

blood found on the convex side of the rock could come from 0.4 percent of the county population, or roughly 32,000 people, and that [Garcia] was a member of this group, but that Velasquez and Perez were not.  The blood on the concave side of the rock could not have come solely from [Garcia], Velasquez[,] or Perez.  However, the sample could have been donated from a combination of blood from two or more donors.  If so, a possible source was a mixture of [Garcia's] and Velasquez's blood." (*People v. Garcia* (Oct. 25, 1993, B070152) at pp. 2-4 [nonpub. opn.] (*Garcia I*).)

The People filed an information alleging that Garcia had, "with malice aforethought," committed first degree murder (§ 187, subd. (a)), that he had personally used "deadly and dangerous weapon[s], to wit, a knife and large rock" in the commission of the murder, and that he had committed the murder "for the benefit of, at the direction of, and in association with a criminal street gang . . . ."  The People also alleged that Garcia had suffered two prior serious felony convictions for purposes of section 667, subdivision (a).

At trial, Garcia's defense was that he was not present when the murder happened.  Garcia "testified that on the night in question he went to visit relatives in Whittier and left the family gathering between 7 and 7:30 p.m. to drive around his old neighborhood in Pico Rivera.  At approximately 8 p.m., [Garcia] encountered Velasquez, an old friend, and spoke with him for a while.  A short while later, [Garcia] was introduced to Perez. [Garcia] knew Perez's uncle from jail and understood that his uncle was affiliated with a prison gang.  Perez asked [Garcia] for a ride home because he wanted to get some money to buy heroin. When Perez returned to [Garcia's] car, he appeared to be upset.

4

Perez told [Garcia] he was unable to get any money and asked for a ride to the Pico Rivera Golf Course so that he could show [Garcia] something. After they walked for a while, Perez pulled out a knife and accused [Garcia] of seeing his girlfriend. Perez lunged at [Garcia] and cut his hand.

"[Garcia] ran to his car and drove to his sister's house. [Garcia] arrived between 9:30 and 10 p.m., and, after [Garcia's] sister was unable to stop the bleeding, [Garcia's] brother-in-law drove him to a hospital. They arrived at approximately 11 p.m. because there was a lot of traffic on the way and they got lost while driving. [Garcia] denied stabbing Velasquez." (*Garcia I*, *supra*, B070152 at p. 5.)

After trial, a jury found Garcia guilty of first degree murder and found true the allegation that he had personally used a knife and large rock to murder Velasquez. The record also indicates that the allegations that Garcia had suffered two prior serious felony convictions for purposes of section 667, subdivision (a) were also found to be true. The trial court sentenced Garcia to a total of 36 years to life in prison.

On July 20, 2021, Garcia filed a petition for resentencing under section 1170.95. In the petition, Garcia alleged that he was convicted of first or second degree murder under the felony murder rule or the natural and probable consequences doctrine, that he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 effective January 1, 2019, and that he was not the actual killer, did not, with the intent to kill, aid and abet the actual killer, was not a major participant in the felony and did not act with reckless indifference to human life during the course of the crime. Garcia also requested that the trial court appoint counsel.

5

The trial court summarily denied Garcia's petition the following day. The order, in its entirety, states: "The court has read and considered the Petition for Resentencing pursuant to Penal Code section 1170.95 received on July 20, 2021. The court has also considered the documents contained in its file in *People v. Sergio Garcia* (case number VA008252), including the felony complaint, information, probation officer's report, minute orders detailing the trial proceedings, and abstract of judgment. A jury convicted petitioner of first-degree murder on the theory that he was a direct perpetrator of the killing and found true the special allegation that he personally used two weapons (a 'knife and large rock') in the commission of the crime. Petitioner is ineligible for relief as a matter of law since the prosecution case was not based upon either the felony murder rule or the natural and probable consequences doctrine. Therefore, the petition is DENIED."

Garcia filed a timely notice of appeal. This court appointed counsel for Garcia. Appellate counsel filed a brief raising no issues and requesting that we independently review the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Counsel notified Garcia that she would be filing the brief and that Garcia could file a supplemental brief with this court.

Garcia submitted a supplemental brief, in which he contends that the trial court erred when it summarily denied his section 1170.95 petition without first appointing counsel and affording him an evidentiary hearing. He also contends that the jury was given conflicting jury instructions because they were instructed on both first and second degree murder as well as aiding and abetting liability. Based on these purportedly conflicting jury instructions, Garcia argues, he should be able to

6

argue in the trial court that the blood evidence introduced in the trial court was inadmissible, and that he should be able to introduce evidence to "dispute facts of [the] case such as . . . blood stains, weapon DNA and other evidence used against appellant."

## DISCUSSION

Because Garcia's appeal is not from his conviction, he is not entitled to our independent review of the record pursuant to *Wende* or its federal constitutional counterpart, *Anders v. California* (1967) 386 U.S. 738. (See *People v. Kelly* (2006) 40 Cal.4th 106, 119; *People v. Serrano* (2012) 211 Cal.App.4th 496, 503 (*Serrano*); *Pennsylvania v. Finley* (1987) 481 U.S. 551, 559.)[2] He is entitled, however, to file a supplemental brief and, if he files such a brief, to our review of his contentions. (See *Serrano*, at p. 503.) We therefore consider the contentions raised in Garcia's supplemental brief.

Five days after the trial court summarily denied his petition, our Supreme Court issued its opinion in *People v. Lewis* (2021) 11 Cal.5th 952. In that opinion, the court concluded that "petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition [citation] and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine

---

[2] Under *Serrano*, in a criminal appeal in which *Wende* does not apply, counsel who finds no arguable issues is still required to (1) inform the court that counsel has found no arguable issues to be pursued on appeal; (2) file a brief setting out the applicable facts and law; (3) provide a copy of the brief to appellant; and (4) inform the appellant of the right to file a supplemental brief. (*Serrano, supra*, 211 Cal.App.4th at p. 503, citing *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544.)

whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Id*. at p. 957.) The trial court's failure to appoint counsel, however, was subject to a harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis*, at pp. 957-958.)

The trial court erred by summarily denying Garcia's petition without first appointing counsel and allowing briefing. (*Lewis, supra*, 11 Cal.5th at p. 957.) But as we explore below, the record of conviction in this matter establishes that Garcia is ineligible for relief under section 1170.95 as a matter of law. The trial court's error was harmless. (See *Watson, supra*, 46 Cal.2d at p. 836.)

Upon receipt of a facially sufficient petition that also requests appointment of counsel, section 1170.95 requires the trial court to appoint counsel to represent the petitioner. (§ 1170.95, subd. (b)(3).) Within 60 days, the prosecutor must file and serve a response to the petition, and the petitioner may file and serve a reply within 30 days thereafter. (§ 1170.95, subd. (c).) "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (*Ibid.*) If the trial court issues an order to show cause, the trial court must hold a *second* hearing—this one to determine whether to vacate the petitioner's conviction. (§ 1170.95, subd. (d)(1).) Evidence may be introduced at the *second* hearing. (§ 1170.95, subd. (d)(3).)

Here, the trial court should have appointed counsel, allowed the parties to brief the matter, and conducted the hearing required by section 1170.95, subdivision (c) "to determine whether the petitioner has made a prima facie case for relief."

It is evident from the record of conviction, however, that Garcia has not made a prima facie case for relief under section 1170.95.

Relief under section 1170.95 is limited to persons "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter." (§ 1170.95, subd. (a).) The petition must allege that "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine." (§ 1170.95, subd. (a)(1).) It must also allege that the petitioner "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).)

The record of conviction here establishes that Garcia was prosecuted as Velasquez's actual killer. The information alleges malice murder and Garcia's personal use of two deadly weapons to kill Velasquez. The jury clearly and soundly rejected Garcia's trial testimony and chose to believe that Garcia was at least *an* actual killer—even if not the *only* actual killer—of Velasquez.

9

The result is that Garcia is ineligible for relief as a matter of law for at least two reasons.  First, he is not "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ."  (See § 1170.95, subd. (a).)  Rather, he was convicted of first degree malice murder.

Second, Garcia *could* still be convicted of murder after the changes to sections 188 and 189 effective January 1, 2019.  (See § 1170.95, subd. (a)(3).)  Under section 189 as it currently exists, one who murders is still liable for murder if they were the actual killer.  (§ 189, subd. (e)(1).)

The record of conviction therefore establishes that Garcia is ineligible for relief as a matter of law.  The trial court's error was harmless.  (*Lewis*, *supra*, 11 Cal.5th at pp. 957-958; *Watson*, *supra*, 46 Cal.2d at p. 836.)

We need not reach Garcia's contention that he would have been entitled at an evidentiary hearing to retry questions of fact that a jury necessarily decided against him at his trial because Garcia never established that he was entitled to an evidentiary hearing under section 1170.95, subdivision (d)(3) in the first instance.  The proceedings in this matter would necessarily have concluded with an order declining to issue an order to show cause and stating the reasons why.  (§ 1170.95, subd. (c).)

Although Garcia is not entitled to *Wende* review on this appeal, we have examined the entire record and are satisfied that Garcia's counsel has fully complied with her responsibilities under *Wende* and *Serrano*.  (See *Wende*, *supra*, 25 Cal.3d at p. 441; *Serrano*, *supra*, 211 Cal.App.4th at p. 503.)  No arguable issues exist.

10

**DISPOSITION**

The trial court's order is affirmed.

NOT TO BE PUBLISHED

                                        CHANEY, J.

We concur:


        ROTHSCHILD, P. J.


        CRANDALL, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.